IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–01731–CMA–KMT

KENNETH D. WOOD, and
LAURIE A. WOOD,

      Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on Defendant Wells Fargo Bank, N.A.'s "Motion to Dismiss and Supporting Memorandum Brief" (Doc. No. 11 [Mot.], filed July 8, 2013), to which Plaintiffs filed their response on July 24, 2013 (Doc. No. 12 [Resp.]), and Defendant filed its reply on August 6, 2013 (Doc. No. 15 [Reply ]).  This motion is ripe for recommendation and ruling.  '

### STATEMENT OF THE CASE

Plaintiffs allege that the defendant "misrepresented and overstated the value of [their] property in the mortgage lending process" (Doc. No. 3 [Compl.], ¶ 8) in order to "fraudulently induce[] the Plaintiffs into [refinancing] a mortgage loan" (*id.*, ¶ 13) in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), § 18 U.S.C. § 1962(c).  (*See id.*)  Plaintiff "seeks to recover the difference between the value of the subject property as it was fraudulently

represented by the Defendant [$350,000 February 22, 2007 and $295,000 June 25, 2004], and the actual value of the property at the time of the signing of the loan and mortgage contracts [$259,792 in 2007 and $212[,]207.00 in 2004." (*Id.*, ¶ 14.)

## LEGAL STANDARD

### *1.* **Pro Se** *Plaintiffs*

Plaintiffs are proceeding *pro se*. The court, therefore, "review[s] [their] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

## *2.   Failure to State a Claim Upon Which Relief Can be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

## ANALYSIS

Defendant argues that Plaintiffs' Complaint should be dismissed because (1) it is time-barred by the applicable statute of limitations; and (2) it fails to plead specific facts needed to state a RICO claim. (*See* Mot.)

### 1. *RICO'S Four-Year Statute of Limitations*

A civil federal RICO action is subject to a four-year limitations period. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156. However, the Supreme Court has not determined whether this four-year statute begins running (1) when the plaintiff knew or should have known of his injury (the injury-discovery rule), or (2) when the plaintiff was injured, whether aware of the injury or not (the injury-occurrence rule). *See Dummar v. Lummis,*

543 F.3d 614, 621 (10th Cir. 2008) (citing *Cory v. Aztec Steel Bldg, Inc.*, 468 F.3d 1226, 1234 (10th Cir. 2006). Whether under the injury-discovery or harsher injury-occurrence rule, a plaintiff's awareness of the pattern of racketeering activity is not required to trigger the running of the statute of limitations. *Dummar*, 543 F.3d at 621 (citing *Rotella v. Wood*, 528 U.S. 549, 553–54 (2000) ("discovery of the injury, not discovery of the elements of a claim is what starts the clock")).

In their Complaint, Plaintiffs state that "the misrepresentations made by the Defendant to the Plaintiffs in the mortgage loan transactions dated February 22, 2007 and June 25, 2004 are part of an ongoing pattern of felony criminal mortgage fraud, mail fraud, and wire fraud being conducted by the Defendant and non-party malfeasants."[1] (Compl., ¶ 9.b.) According to the allegations in Plaintiffs' Complaint and the documents attached to their Complaint, Plaintiffs had knowledge of the property appraisals necessary for origination of their loans prior to their execution of the loans on June 25, 2004, and February 22, 2007.[2] (*Id.*, ¶ 8, Ex. 1 at 1 and Ex. 2 at 1.) It is clear from the allegations in Plaintiffs' Complaint and the exhibits attached to the Complaint that the Delta County Assessor's Office's conducted property appraisals in 2005 and

---

[1] Plaintiffs also allege that "between the years 2001 and 2008 Defendant conducted or participated in a pattern of racketeering activity in violation of RICO." (*Id.*, ¶ 33.) However, Plaintiffs fail to make any specific allegations regarding any conduct by Defendant that violated RICO outside of its allegedly overinflating the appraisals prior to the loan transactions on June 25, 2004, and February 22, 2007.

[2] A court may consider documents to which the complaint refers if the documents are central to the plaintiffs' claim and the parties do not dispute the documents' authenticity. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941–42 (10th Cir. 2002).

2007.  (Compl., ¶ 53, Exs. 3 and 4.)  What is not clear is when the plaintiffs were given notice of the Assessor's Offices' appraisals.

If the court applies the injury-occurrence rule, the court finds the latest injury occurred when the Delta County Assessor's Office conducted its 2007 property appraisal.  Therefore, because Plaintiffs would have had four years from the date of the later injury—or until sometime in 2011—to file their RICO claims, their claims would be time-barred.

However, there is insufficient documentation for the court to come to the same conclusion if it applies the injury-discovery rule.  In their Complaint, Plaintiffs allege their "first 'storm warnings' of mortgage fraud came in the year 2012," when they learned of the testimony of a former federal bank regulator who testified before the House Financial Services Committee about the practice of national banks rigging financial incentives to originate fraudulent loans. (*Id.*, ¶ 7.)  Plaintiffs allege this information prompted them to "investigat[e] the possibility that the Defendant . . . had misrepresented and overstated the value of the property in the mortgage lending process," and in the course of their investigation they discovered the Delta County Assessor's Office records.  (*Id.*, ¶ 8.)  If Plaintiffs received notice of the Delta County Assessors' Office appraisals at or near the time of the appraisals, or anytime before June 30, 2008, their RICO claim would be time barred.  However, if, as the Plaintiffs allege, they were unaware of the Assessors' Office appraisals until sometime in 2012, the court is unable to find that the

plaintiffs knew or should have known of their injury until that time, and their RICO claims are timely.[3]

Based on the record as it stands, the court is unable to find that Plaintiffs' RICO claims are time-barred, and Defendant's Motion to Dismiss in this regard properly is denied.

*2.  RICO Claim*

Defendant argues Plaintiffs fail to state a viable RICO claim. The relevant portion of the RICO Act provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (citing 18 U.S.C.1962(a)-(c)); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

---

[3]It is very likely Plaintiffs received notices from Delta County or from the defendant regarding the property valuations, the property tax assessments based on such valuations, and property taxes paid by the defendant by monies held in escrow. However, neither party has submitted evidence of such notices, and even if they had, the court would not be able to consider them in ruling on a motion to dismiss unless (i) the complaint incorporates the documents by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); (ii) the documents are "referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen*, 287 F.3d at 941; or (iii) the documents are "matters of which a court may take judicial notice," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 322.

### A.     *Plausible Wrongdoing by Defendant Wells Fargo*

First, Defendant argues that Plaintiffs do not allege any plausible wrongdoing by Wells Fargo. (Mot. at 5–8.) Plaintiffs allege that Defendant committed fraud "by misrepresenting and overstating the value of the property by using a false and inflated appraisal where the appraiser 'met the numbers in the loan docs'." (Compl. ¶ 13.) Defendant argues that the sole basis for Plaintiffs' claim is that the lender's appraisals valued the property at $295,000 in 2004 and at $350,000 in 2007, while the Delta County appraisal used for assessing property taxes valued the property at $212,207 in 2004 and $259,792 in 2007. (Mot. at 5 [citing Compl., ¶ 14].) Defendant contends that Plaintiff's allegations are implausible because the difference between the lender's appraisals and Delta County's appraisals does not support an inference of misrepresentation or fraud. (*Id.*)

In their Complaint, Plaintiffs allege the Financial Institution Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") requires an appraiser who is hired by a lender to appraise the value of a property for purposes of funding a loan to comply with the Uniform Standards of Professional Appraisal Practice ("USPAP"). (Compl., ¶¶ 18–19.) The appraiser's role is to provide "an objective, unbiased opinion of the value [of the individual appraised property] to the lender." (*Id.*, ¶ 22.) Plaintiffs allege that in 2004 the lender valued Plaintiffs' property at $295,000, and in 2007 the lender valued Plaintiffs' property at $350,000. (*Id.*, ¶ 14.)

Defendant argues that Delta County's appraisal is governed by Colorado Statute, which states that "[t]he actual value of residential real property shall be determined solely by consideration of the market approach to appraisal." (Mot. at 6 [quoting Colo. Rev. Stat. § 39-1-

8

103(5)(a)].) Defendant argues there are significant differences between the lender's appraisal and the county appraisal in terms of how the property is valued, what data is used for the valuation process, and on what date the valuation is determined. (*Id.* at 7.) In support of Defendant's argument, it submits a guide from the Delta County's Assessor's website titled "Mass Appraisal Explained" (*id.*), in which the Delta County Assessor explains the differences, and urges the court to take judicial notice of the guide. (*Id.* at n.1.) "Public records and government documents are generally considered not to be subject to reasonable dispute. This includes public records and government documents available from reliable sources on the Internet." *Allen v. United Props. & Constru., Inc.*, No. 07-cv-0024, 2008 WL 4748511, at *3 (D. Colo. Oct. 28, 2008) (citation omitted). Here, however, the guide attached to Defendant's Motion and on the Delta County Assessor's website shows a revision date of December 2010. (*See* Mot., Ex. 1 at 1.) The County appraisals at issue in this case took place in 2004 and 2007, well before publication of the revised guide. Because it is unclear to this court that the Delta County Assessor used the same means for conducting property valuations prior to December 2010 as it explains in the guide, this court declines to take judicial notice of the guide. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir.2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records . . . .") As such, the court may not consider the guide in its Recommendation on Defendant's Motion. *See Tellabs, Inc.*, 551 U.S. at 322. Therefore, Defendant's argument that Plaintiffs have failed to "plausibly suggest that Wells Fargo engaged in fraud" (Mot. at 8), which is based wholly on the document that the court declines to consider, fails.

### B.     RICO Enterprise and Defendant's Conduct in the Enterprise

Next, Defendant argues Plaintiffs have failed to allege any RICO enterprise and, even if they have, Plaintiffs fail to allege the Defendant violated RICO by conducting the affairs of a racketeering enterprise that was independent of the racketeering acts. (Mot. at 8–10.)

The second RICO element, an enterprise, *see Tal*, 453 F.3d at 1261, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has held that liability under § 1962(c) "depends on showing that the defendant[ ] conduct[s] or participat[es] in the conduct of the 'enterprise's affairs,' not just [its] own affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

Defendant argues that Plaintiffs "simply allege that Wells Fargo, acting alone, made misrepresentations and overstated the value of the property." (Mot. at 8 [citing Compl., ¶¶ 30–32].) The court disagrees. Plaintiffs allege that the appraiser, who worked for the defendant, "met the numbers in the loan docs" in order to induce the plaintiffs into a mortgage loan. (*See* Compl., ¶¶ 13, 23.)

Next, Defendant argues that Plaintiffs fail to allege facts that Defendant is an "association-in-fact" enterprise. (Mot. at 8 [citing *Boyle v. United States*, 556 U.S. 938, 946–47 (2009)].) However, Defendant is a corporation "with formal legal structures most commonly established for business purposes" *Boyle*, 556 U.S. at 953, and not an association-in-fact. *See id.* (" '[A]ssociated in fact' just means structured without the aid of legally defined structural

forms such as the business corporation") (quoting *Limestone Development Corp. v. Lemont*, 520 F.3d 797, 804–805 (7th Cir. 2008)).

In a recent case, District Judge Christine M. Arguello discussed the requirement that a "the defendant 'person' must be an entity distinct from the alleged 'enterprise' " and the importance of the requirement where a RICO defendant is also a corporate entity. *See Marlow v. Allianz Life Ins. Co. of N. Am.*, Civil Action No. 08–cv–00752–CMA–MJW, 2009 WL 1328636, at *5 (D. Colo. May 12, 2009) (citing *Brannon v. Boatmen's First Nat'l Bank of Okla.*, 153 F.3d 1144, 1146 (10th Cir. 1998)). Judge Arguello explained that "where an alleged enterprise is really nothing more than a defendant corporation and its affiliates and associates conducting normal business affairs, RICO liability does not attach." *Allianz*, 2009 WL 1328636, at *5 (citing cases). Here, however, Plaintiff alleges the defendant was in collusion with various appraisers, who work for the Defendant, to "[meet] the numbers in the loan docs" to justify the amount of the loans. (Compl., ¶¶ 13, 23, 30.) The conduct alleged by Plaintiffs, taken as true and construed in the light most favorable to the plaintiffs, *Hall*, 935 F.2d at 1198, is that outside of the defendant's normal business affairs. The court finds, at this stage, Plaintiffs sufficiently have pleaded an enterprise and Defendant's participation in the enterprise for purposes of asserting a RICO claim.

### C. *Plaintiffs Have Not Pleaded Their Rico Claim with Particularity*

Defendant also argues that Plaintiffs have not pleaded their RICO claim with particularity. (Mot. at 11–12.) " 'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as any 'act which is indictable' under federal law and specifically includes mail fraud, wire fraud

11

and racketeering.  These underlying acts are 'referred to as predicate acts, because they form the basis for liability under RICO.' " *Tal*, 453 F.3d at 1261 (quoting *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999)).  In their Complaint, Plaintiffs allege the predicate acts of mail fraud and wire fraud.  Defendant argues that Plaintiffs have not pleaded the RICO claim with particularity.

### A.    *Racketeering Activity*

"To establish the predicate act of mail fraud, [the plaintiffs] must allege (1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme." *Tal*, 453 F.3d at 1263 (quotation omitted).  "The elements of wire fraud are very similar, but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud ." *Id.* (quotation omitted).

> The common thread among these crimes is the concept of "fraud." Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury. Failure to adequately allege any one of the nine elements is fatal to the fraud claim.

*Id.* (internal quotation and alterations omitted).  "[A] plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme and allege facts that give rise to a strong inference of fraudulent intent." *Kashelkar v. Rubin & Rothman*, 97 F. Supp.2d 383, 393 (S.D.N.Y. 2000) (citation omitted).  Regarding wire fraud, a plaintiff must allege the number of wires, the precise dates, and how they further the scheme. *Weiszmann v. Kirkland*

*and Ellis*, 732 F. Supp. 1540, 1546 (D. Colo. 1990). The defendant must participate in each with the specific intent to defraud. *United States v. Washita Constr. Co.*, 789 F.2d 809, 817 (10th Cir. 1986).

The particularity requirement of Federal Rule of Civil Procedure 9(b) applies to claims of mail and wire fraud. *Id.* That rule provides specifically, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). "Thus, a complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal*, 453 F.3d at 1263 (quotation and alteration omitted). "A plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme." *Id.* (quotation omitted).

Plaintiffs have not adequately pleaded the elements of mail or wire fraud. Plaintiffs state the allegations in the most vague and conclusory manner, alleging merely that the defendant, "[o]n or about February 22, 2007 and June 25, 2004," used mail or carrier services and facsimile and/or Internet "for various documents associated with the loan." (Compl., ¶¶ 44–45.) Plaintiffs' Complaint lacks specific allegations regarding the exact time, place, and content of the alleged fraud. Plaintiffs have not alleged what documents or communications were sent, how they were sent, to whom they were sent, the contents of the documents or communications, or how the documents or communications were fraudulent. *See Kashelkar*, 97 F. Supp.2d at 393 (allegations giving no particulars about what were the alleged statements, who made them, when

and where they were made, what role they played in the scheme, or any facts which give rise to an inference of fraudulent intent" failed to satisfy pleading requirements of a RICO claim) (citation omitted). Mail fraud is not committed simply by sending false statements through the mail. Instead, the mails must have been used to further a scheme to defraud or obtain money or property through false pretenses. *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 991 (8th Cir. 1989). General allegations that the mails were used in connection and in furtherance of the enterprise are insufficient to meet the particularity requirements of Rule 9(b). *In Re Sattler's*, 73 B.R. at 786 (citation omitted). Plaintiffs' allegations are insufficient to meet the requirements that a RICO claim based on fraud be stated with particularly. Therefore, Plaintiffs' Complaint properly is dismissed.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that Defendant Wells Fargo Bank, N.A.'s "Motion to Dismiss and Supporting Memorandum Brief" (Doc. No. 11 ) be **GRANTED** and that Plaintiffs' Complaint be dismissed in its entirety.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 2nd day of October, 2013.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge